The **BENDIX CORPORATION** and Sellew Corporation, Plaintiffs,

v.

**BALAX, INC.** and John M. Van Vleet, Defendants.

No. 64–C–170.

United States District Court, E. D. Wisconsin.

Jan. 8, 1971.

Foley & Lardner, by John R. Collins, Milwaukee, Wis., Winston, Straen, Smith & Patterson, by Edward L. Foote, Chicago, Ill., for plaintiffs.

Quarles, Herriott, Clemons, Teschner & Noelke, by Thomas O. Kloehn, Milwaukee, Wis., for Balax, Inc.

Erbstoeszer, Cleary & Zabel, by Louis H. Parent, Milwaukee, Wis., for John M. Van Vleet.

### DECISION

MYRON L. GORDON, District Judge.

On January 30, 1970, the court of appeals vacated a district court judgment

which had dismissed Balax's anti-trust counterclaim against Bendix. 421 F.2d 809, 821 (7th Cir. 1970). The court of appeals remanded the case for reconsideration of the anti-trust issue.

The court of appeals commented, at page 821:

"\* \* \* the right to estop licensees from challenging a patent is not part of the 'limited protection' afforded by the patent monopoly. Furthermore, the reason is that it creates a danger of unwarranted monopolization. Such danger may be even greater here than in the usual licensee-estoppel case for the reason that in the instant case the licensor sought to create an irrevocable estoppel, not one merely extending during the life of the licenses and sales agreements."

The above quotation from the court of appeals undoubtedly constitutes the "law of the case". In addition, the correctness of the statement is supported by the testimony taken at the original trial and at the hearing on reconsideration. For example, when Besly negotiated to sell swaging taps to Pratt & Whitney, the latter contracted not to contest the validity of the Besly patents "during the life of this agreement or thereafter". A similar understanding was reached with Jarvis Corporation.

When Besly dealt with John Bath & Company regarding a license, the latter company's acknowledgment of the validity of Besly's patents contained no time limitation. In negotiating with Cleveland Twist Drill Co., the acknowledgment of the validity of Besly's patent at first was to last for "the life of said option" ; this provision, however, was stricken and thus, the concession as to validity continued for an indefinite period of time.

Besly had contracts with over a dozen different companies to act as either a manufacturing licensee or a sales outlet. Each agreement with the following companies contained a concession by the contracting party either that it would not legally challenge the Besly patent or that it acknowledged the patent's validity: Hy-Pro Tool Company, United-Greenfield Corporation, Union Twist Drill Co., National Twist Drill & Tool Co., DoAll Company, and Threadwell Tap & Die Co.

Balax correctly points out that as of June, 1970 there were only two manufacturers of swaging taps in the United States who were not licensed by Besly, to-wit: Vermont Tap & Die Company and Balax. It is thus apparent that through its agreements, Besly had gained and retained control of a substantial portion of the swaging tap market.

I find that in actual practice, Besly was able to, and did, monopolize the swaging tap market and improperly influence the pricing structure for the commodity. Besly was able to negotiate the royalty rate charged to licensees in a substantial portion of the market and was able to exert an excessive influence on pricing. Having obtained concessions as to the "validity" of its now invalid patent, and having obtained waivers regarding judicial action, Besly was able to, and did, monopolize the swaging tap market. Besly's opportunity to monopolize was enhanced by its having commenced actions against alleged infringers or by threatening to so do. Through this technique, in the words of International Salt Company v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 15, 92 L. Ed. 20 (1947), Besly was able, unlawfully, "to foreclose competitors from any substantial market."

I conclude that Balax, Inc. and Mr. Van Vleet have established their counterclaim and are entitled to judgment. Their counsel may submit findings of fact and conclusions of law for the court's consideration within 10 days from the date of this decision. Such document shall also be served, at the same time, upon counsel for Bendix, who are to have one week thereafter in which to file with the court any objections to the proposed findings of fact and conclusions of law.